UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-80142-Civ-Altman/Brannon

CLAIRE F. HOWZELL,

      Plaintiff,

vs.

ANDREW M. SAUL, Commissioner
of Social Security Administration,

      Defendant.

_____/

## REPORT & RECOMMENDATION

THIS CAUSE is before the Court on Plaintiff's appeal of Defendant's final administrative decision denying her claim for disability insurance benefits under the Social Security Act.  Plaintiff filed a Motion for Summary Judgment [DE 10], Defendant filed a Combined Motion for Summary Judgment/Response [DE 13], and Plaintiff filed a Reply [DE 15].  The Court heard oral argument on July 9, 2020 [DE 17].  Upon scrutiny of the record and with the benefit of oral argument, the Court recommends that Defendant's decision be REVERSED AND REMANDED for reconsideration of the medical opinion evidence and consideration of Plaintiff's alleged headaches impairment.

## I.    LEGAL STANDARD

To qualify for Social Security benefits, a claimant must show that she is disabled.  *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A disability benefits claim follows a multi-layered process before it can be reviewed in federal court.  A claimant first applies to a state agency for disability determinations, 42 U.S.C. § 421(a), after which the claimant is entitled to an evidentiary hearing before an Administrative Law Judge ("ALJ").  *Heckler v. Day*, 467 U.S. 104, 106–07 (1984).  The ALJ follows a five-step, sequential evaluation to determine if a claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"); (4) can perform past relevant work based on a residual functional capacity ("RFC") assessment; and (5) retains the ability to perform any work in the national economy.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines–Sharp v. Comm'r of Soc. Sec.*, 511 Fed. Appx. 913, 915 n.2 (11th Cir. 2013).  If an individual is found disabled or not disabled at any step, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).

A claimant may appeal an ALJ's unfavorable decision to an Appeals Council that must review the case and determine if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record."  *Heckler*, 467 U.S. at 106-07; 20 C.F.R. § 404.970(a).  After completing the foregoing administrative process, a claimant may seek review in federal court.  42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).

This Court's scope of review is limited to determining if (1) substantial evidence supports the Commissioner's findings, and (2) the correct legal standards were applied.  *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). To make this determination, the Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

In testing for substantial evidence, the Court may not "reweigh the evidence" or "decide the facts anew." *Winschel*, 631 F.3d at 1178. Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive and the Court must defer to the ALJ's decision even if the evidence preponderates against it. *Crawford*, 363 F.3d at 1158-59. However, the court will not "merely rubber-stamp a decision ... [and] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019). Remand is appropriate for further factual development where the record reveals evidentiary gaps that result in unfairness or clear prejudice. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

The Court also reviews the ALJ's decision to determine if the correct legal standards were applied. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## II.    **BACKGROUND**

On November 18, 2015, Plaintiff applied for disability insurance benefits, alleging disability beginning on August 13, 2015 [Tr. 180-89].[1] In her application, Plaintiff alleged

---

[1] A 991-page certified transcript [DE 7] contains the entire administrative record. The transcript index [DE 7 at 2-6] identifies each document or set of documents by exhibit number and description, all of which are

disability due to osteoarthritis, depression, anxiety, headaches, panic attacks, severe back pain degenerative disc disease, hypertension, and bone spurs in her upper and lower back [Tr. 223]. Plaintiff's application was denied initially and on reconsideration [Tr. 60-91, 94-102].

At Plaintiff's request, an ALJ held a hearing on April 17, 2018 [Tr. 37-59].  Plaintiff, who was represented by counsel, testified at the hearing.  Plaintiff—who was 63 years old at the time of the hearing—testified to working previously for eight to ten years as a Specialist for Florida's Department of Children and Families providing child support and relative caregiver benefit information and training [Tr. 41, 45].  Plaintiff said she is divorced and lives alone, but her adult daughter and adult stepson help her out during the week with bathing, some cleaning, and pet care [Tr. 41, 48-49].  Plaintiff testified about her daily activities and her past and present medical condition [Tr. 41-57].  When the ALJ asked Plaintiff why she stopped working, Plaintiff responded: "it wasn't a head injury, but I had something go on with my head that I was passing out and it was spinning and I couldn't mentally function anymore … the doctors could never find out what it was, but it caused me to have memory loss and tightness of my head … like a pressure … coming from the back of my head all the way to the front." [Tr. 42-43].  After the hearing, at the ALJ's request, a vocational expert ("VE") submitted responses to a vocational questionnaire stating that given Plaintiff's residual functional capacity, Plaintiff could return to her past relevant work [Tr. 361-66].

On December 27, 2018, the ALJ issued a written decision finding Plaintiff not disabled [Tr. 10-21].  The ALJ's decision followed the five-step sequential evaluation.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date

---

bookmarked and easily accessible via hyperlinks.  The Court cites to the transcript as "Tr." followed by the page number(s) listed on the index and located at the bottom right-hand corner of each page.

of August 13, 2015 [Tr. 12]. At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine and sacrolitis [Tr. 13]. The ALJ found that Plaintiff's alleged bone spur was not a medically determinable impairment and that Plaintiff's medically determinable impairments of hypertension, insomnia, and vestibular disorder were non-severe [*Id.*]. The ALJ further found that Plaintiff's anxiety and insomnia were non-severe mental impairments after considering these impairments using the psychiatric review technique and finding that Plaintiff had "no" limitation adapting or managing herself and only "mild" limitations in understanding, remembering, or applying information; interacting with others; and, concentrating, persisting, or maintaining pace [Tr. 13-14]. At step three, the ALJ found Plaintiff's impairments, or their combination, did not meet or equal the criteria of any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 [Tr. 15].

After considering Plaintiff's impairments, at step four, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b)[2] except she could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and could occasionally balance, stoop, kneel, crouch, and crawl [*Id.*]. In support of this RFC finding, the ALJ offered a summary and analysis of the record evidence, including the ALJ's assessment of medical reports, statements, opinions, and records pertaining to Plaintiff [Tr. 15-20].

Based on the ALJ's RFC finding and the VE's questionnaire responses, the ALJ found that Plaintiff could perform her past relevant work as a training representative and a technical instructor [Tr. 20]. The ALJ thus ended her analysis and found that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 13, 2015, through the date of the ALJ's decision

---

[2] Light work is defined as lifting up to 20 pounds occasionally and 10 pounds frequently and walking/standing a good deal or sitting most of the time while pushing/pulling arm or leg controls. *See* 20 C.F.R. § 404.1567(b)(2018). The Court notes that this reference is to the 2018 version of the Code of Federal Regulations, which was in effect at the time of the ALJ's decision.

[*Id.*].  On December 9, 2019, the Appeals Council denied Plaintiff's appeal of the ALJ's decision [Tr. 1-6].   Thus, Plaintiff has timely exhausted her administrative remedies and the Commissioner's final decision is ripe for judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## III.   DISCUSSION

Plaintiff argues that the ALJ erred by (1) affording less weight to the opinions of Plaintiff's treating physicians and the greatest weight to non-treating physician opinions, (2) failing to evaluate Plaintiff's headaches impairment, and (3) failing to properly assess Plaintiff's subjective symptoms.   Defendant disagrees, arguing that the ALJ's decision is supported by substantial evidence and the correct legal standards were applied.

The parties' arguments hinge on a review of the ALJ's assessment of Plaintiff's claimed impairments in light of the record evidence.   The Court has scrutinized the entire administrative record—with special attention to the objective medical evidence—and will discuss the relevant portions as necessary to address the parties' arguments.

### A.   *The ALJ's Assessment of the Medical Opinion Evidence*

First, Plaintiff argues that the ALJ improperly weighed the medical opinion evidence.  An ALJ must "'assess and make a finding about [a claimant's RFC] based on all the relevant medical and other evidence' in the case."  *Phillips*, 357 F.3d at 1238 (quoting 20 C.F.R. § 404.1520(e)). When it comes to weighing medical opinion evidence, an ALJ considers many factors such as the examining relationship, the treatment relationship, whether an opinion is well-supported, and whether an opinion is consistent with the record.  20 C.F.R. § 404.1527(c).

An ALJ must give the opinion of a claimant's treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists where (1) the treating physician's opinion is not

reinforced by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with that physician's own medical records. *Winschel,* 631 F.3d at 1179; *Phillips,* 357 F.3d at 1240-41.  The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician and the failure to do so is reversible error. *Winschel*, 631 F.3d at 1179*; Lewis*, 125 F.3d at 1440.

Here, the ALJ assigned "great" weight to the opinions by the State agency medical and psychological consultants and consultative medical examiner Dallas Hessler, D.O. [Tr. 18, 67-71, 83-87, 658-63]; "some" weight to the opinion of Plaintiff's treating physician Raj Khambhati, M.D. [Tr. 18-19, 469, 571-81, 752-56]; and "little" weight to the opinions of consultative psychologist Marie Bourisquot, Psy.D., and Plaintiff's treating physician Alexis Renta, M.D. [Tr. 18-19, 710-16, 760-64].  Upon review, the Court finds that the ALJ did not demonstrate good cause to assign less weight to Plaintiff's treating physicians.

On May 9, 2016, Dr. Khambhati completed a Disability Impairment Questionnaire [Tr. 19, 752-56].  In it, Dr. Khambhati reported seeing Plaintiff every three months and to having first treated Plaintiff four and a half years earlier, on November 3, 2011. [Tr. 752].  Dr. Khambati diagnosed anxiety, depression, headaches, high blood pressure/cholesterol, and chronic back and neck pain [*Id.*].  In support, Dr. Khambati cited cervical and lumbar MRIs of the spine showing herniated discs and noted Plaintiff's primary symptoms as being neck pain, backache, and headaches [Tr. 752-53].  Dr. Khambati indicated that Plaintiff's "all day" pain stemmed from her lower back and headaches [Tr. 753].

Dr. Khambati opined that Plaintiff could sit for 1 hour and stand/walk for less than 1 hour during an 8-hour workday and lift/carry no more than 5 pounds occasionally [Tr. 754]. He also opined Plaintiff would need a 25-minute break every 2 to 3 hours and would be absent from work

more than three times a month due to her impairments [Tr. 755-56].  Dr. Khambhati noted that the emotional factors of depression, lack of sleep, and anxiety contribute to the severity of Plaintiff's symptoms [Tr. 756]. Dr. Khambhati opined that Plaintiff had these limitations as far back as August 2015 [*Id.*].

> In deciding to give "some weight" to Dr. Khambati's opinion, the ALJ found:
>
> [T]he objective medical evidence shows that the claimant exhibited tenderness in the lumbar facets, thoracic, and paraspinal region along with reduced range of motion, tenderness in the sacroiliac joints (SI), and she had antalgic gait at times. However, she had normal findings upon neurological examinations consistently save for antalgic gait at times. In addition, the record shows that the claimant had significant improvement with her treatment regimen involving radiofrequency Rhizotomy along with her pain medications. Furthermore, it was specifically noted that surgical intervention was not indicated. Therefore, the objective medical evidence does not support this opinion. However, to the extent this opinion shows significant limitations in the claimant's ability to perform basic work activity, the undersigned gives it great weight.

[Tr. 19].

Another one of Plaintiff's treating physicians, Dr. Renta, completed a Pain Assessment form on May 20, 2016 [Tr. 710-16].  In it, Dr. Renta reported seeing Plaintiff monthly and to having first treated Plaintiff four years and two months earlier, on March 1, 2012 [Tr. 710].  Dr. Renta's assessment of Plaintiff's limitations was similar to that of Dr. Khambhati [*Compare* Tr. 710-16 *with* Tr. 752-56].  Dr. Renta diagnosed peripheral neuropathy, multiple site osteoarthritis, headaches, degenerative disc disease, and lumbar spondylosis [Tr. 710].  In support, Dr. Renta cited a lumbar spine CT and noted that Plaintiff experienced daily pain due to joint degenerative disease and peripheral neuropathy [Tr. 710-11].  According to Dr. Renta, Plaintiff suffered from chronic pain syndrome in her upper, mid, and lower spine due to arthritis, bone spurs, and disc herniation [Tr. 712].  The signs and symptoms of this diagnosis were identified as decreased range of motion, dysesthesias, hyperalgesia, muscle weakness, neuropathic pain, numbness,

paresthesias, and sensitivity to touch or cold [*Id.*].  Associated psychological factors included anxiety, decreased concentration, inability to focus for two hours at a time, depression, disturbances of mood/affect, and social withdrawal [Tr. 713].

Dr. Renta opined that Plaintiff could sit for 2 hours and stand/walk for less than 1 hour during an 8-hour workday and could occasionally carry 5 pounds [Tr. 714-15].  Dr. Renta also opined that Plaintiff would need to get up from a seated position every 20 minutes to move around for 15 minutes, would need to take unscheduled breaks every 1 to 2 hours for 15 to 20 minutes, and would be absent from work more than three times a month due to her impairments [Tr. 714, 716].  Dr. Renta further limited Plaintiff to never/rarely grasping, turning, or twisting objects; doing fine manipulations; or using her arms to reach [Tr. 715].  Dr. Renta noted that Plaintiff's symptoms would increase in a competitive work environment and that her symptoms were severe enough to frequently (defined as 1/3 to 2/3 of an 8-hour workday) interfere with attention and concentration [Tr. 715].  Dr. Renta opined Plaintiff had the noted symptoms and limitations as far back as June 13, 2015 [*Id.*].

In deciding to give "little weight" to Dr. Renta's opinion, the ALJ relied upon the same reasons noted above to discount Dr. Khambati's opinion and added that:

> Moreover, the record does not show that the claimant had any manipulative limitations.  The claimant's EMG did not show any limitations with respect to her upper extremities.  To the contrary, the record shows that the claimant's fine and gross coordination was within normal limits, and she exhibited normal grip and pinch strength.  This [sic] limitations is also inconsistent with Dr. Khambati's opinion, which notes no manipulative limitations[.]  In addition, question #18a was pre-printed on the form, suggested that it was completed before [] Dr. Renta completed the form.

[Tr. 19].

Substantial evidence does not support the ALJ's stated reasons for discounting the treating physician opinions of Dr. Khambati and Dr. Renta.  Plaintiff's underlying medical records reveal

as follows.  Dr. Khambati and Dr. Renta both treated Plaintiff for over four years.  Plaintiff started pain management treatment with Dr. Renta (a board-certified anesthesiologist with a subspecialty in pain medicine) in March 2012 to address lower back, leg, left arm, and neck pain [Tr. 584-86, 710].  In November 2012, Dr. Renta implanted a spinal neurostimulator into Plaintiff's spine [Tr. 626-27].  Following this implantation, Plaintiff continued to regularly treat with Dr. Renta for pain management [Tr. 593-653].

Dr. Renta's treatment notes from after Plaintiff's alleged onset date document approximate monthly visits from August 2015 to January 2018 [Tr. 593, 639-644, 702, 681-88, 811-24, 837-49, 860-63, 881-84, 898-01, 904-17, 920-23].  Dr. Renta's earlier records from 2015 to early 2016 are written by hand and are hard to interpret; however, these earlier records document Plaintiff's continued complaints of lower back pain, neck pain, leg pain, and bilateral hip pain [Tr. 593, 639-644, 702].

Dr. Renta's records from March 2016 to January 2018 are typed and readable [Tr. 681-88, 811-24, 837-49, 860-63, 881-84, 898-917, 920-23].  These later records document Plaintiff's continued complaints of bilateral hip and lower back pain [Tr. 681, 683, 687, 811].  Plaintiff's pain was "worsened by activities of daily living" but her medications allowed her to do activities of daily living [Tr. 683, 811, 813, 815, 817, 819, 821, 823, 824].  Dr. Renta's examination notes consistently reported the abnormalities of antalgic gait, tenderness of the lumbar paraspinals and over the bilateral hips, tenderness of the lumbar facets at L3 and L4, decreased range of motion, and increased pain on hyperextension and lateral rotation [Tr. 681, 683, 811, 813, 815, 817, 819, 821, 823, 824, 862, 883, 898, 900, 902, 904, 906, 911, 915, 922]. Dr. Renta consistently assessed chronic lumbar radiculopathy, cervical radiculopathy, hip bursitis, migraine headaches, lumbar

neuritis, and thoracic and lumbar facet pain [Tr. 681, 684, 685, 812, 814, 815, 819, 823, 839, 844, 848, 906].

Between March 2016 and August 2016, Dr. Renta provided bilateral hip steroid injections [Tr. 687] and a series of three lumbar facet injections [Tr. 683, 817-18, 821-22]. In August 2016, Dr. Renta found that Plaintiff's "symptoms [were] not relieved with conservative treatments" [Tr. 819]. The next month, September 2016, Dr. Renta administered a radiofrequency nerve ablation, also known as rhizotomy, at the lumbar facets [Tr. 813]. Plaintiff reported increased pain after the procedure, after which Dr. Renta prescribed Cymbalta for "depress[ion] due to increased pain" and administered a post-rhizotomy lumbar facet injection to treat lumbar facet pain [Tr. 811-12]. At an appointment on November 11, 2016, Plaintiff noted 60% overall improvement "with medication management and injection therapy" but reported sharp pain due to continued bilateral hip, low back, and leg pain [Tr. 839]. In December 2016, Dr. Renta provided bilateral sacroiliac joint injections for sacroiliitis [Tr. 844].

From February 26, 2015 to March 23, 2016, Plaintiff simultaneously treated with her primary care physician, Dr. Khambati [Tr. 539-68, 672-75]. Dr. Khambhati diagnosed intractable chronic migraine, major depressive disorder, recurrent episode, moderate, degeneration of cervical intervertebral disc, lumbosacral spondylosis, anxiety state, hypertension, dizziness, and giddiness and provided medication management including instructing Plaintiff to continue taking Percocet, Lexapro, Paroxetine, Meclizine, and other prescribed medications [Tr. 540, 543, 546-47, 549, 552, 555, 557, 673].

The ALJ mischaracterized certain relevant medical evidence when deciding to assign less weight to the opinions of Plaintiff's treating physicians Dr. Renta and Dr. Khambati. For instance, the ALJ reasoned that Plaintiff had normal neurological findings save for antalgic gait "at times"

and that "the record shows that [Plaintiff] had significant improvement with her treatment regimen[] involving radiofrequency Rhizotomy along with her pain medications" [Tr. 19]. These findings by the ALJ are contradicted by Plaintiff's treatment notes. Dr. Renta consistently reported signs and symptoms of neurological conditions such as dysesthesias, hyperalgesia, muscle weakness, neuropathic pain, numbness, paresthesias, and sensitivity to touch or cold [Tr. 712]. Dr. Renta also documented antalgic gait for Plaintiff on 20 different examinations over a period of 21 months [Tr. 681, 683, 811, 813, 815, 817, 819, 821, 823, 824, 862, 883, 898, 900, 902, 904, 906, 911, 915, 922 (documenting Plaintiff's antalgic gait at different visits from April 21, 2016 through January 24, 2018)].

As for Plaintiff's treatment progress, after her first rhizotomy, Plaintiff reported increased pain that caused her to become depressed which led to additional treatment using an antidepressant and a lumbar facet injection [Tr. 811-12]. Two months later, Plaintiff had overall "improved 60% with medication management and injection therapy" but continued to report bilateral hip, low back, and leg pain [Tr. 839]. A contemporaneous examination showed no improvement in findings compared to the pre-rhizotomy examinations [*Compare* Tr. 813, 819 *with* Tr. 842-45]. Plaintiff had other interventional pain management treatments such as sacroiliac joint injections [Tr. 822], epidural injections [Tr. 848, 862, 898, 915], another rhizotomy [Tr. 906], and spinal cord stimulator adjustments [Tr. 911, 915]. While it is true that Plaintiff reported some relief with these procedures [Tr. 848—"greater than 50% relief with injection therapy for greater than 2 weeks"; Tr. 904—"reporting greater than 70% relief"], Plaintiff nonetheless expressed continuous and ongoing pain [Tr. 848—pain rated 8/10, described as sharp and radiating; Tr. 862—pain rated 10/10 and described as sharp and radiating; Tr. 900—pain rated 6/10 and described as sharp and dull; Tr. 902—pain rated 7/10 and described as sharp and dull; Tr. 906—pain rated 10/10 and

12

described as sharp and dull]. Plaintiff's pain was described as "progressively worsening" over the course of several months in late 2017 [Tr. 898, 911, 915, 922]. Thus, contrary to the ALJ's finding of "significant improvement," Plaintiff's medical records paint a picture of sporadic and at times "progressively worsening" improvement in which Plaintiff experienced temporary and partial relief from varying interventions but continued to require medication and further interventions to relieve continuing pain. *See Martz v. Comm'r*, 649 F.App'x 948, 960 (11th Cir. 2016) ("improvement is a relative concept and, by itself, does not convey whether or not a patient has recovered sufficiently to no longer be deemed unable to perform particular work on a sustained basis."); *Wingard v. Colvin*, 2015 WL 4350623, at *5 (M.D. Fla. July 14, 2015) (ALJ erred by discounting a treating physician's opinion based upon the ALJ's finding that the Plaintiff's pain was well-controlled when treatment records indicated continued pain).

The ALJ also remarked that "surgical intervention was not indicated" for Plaintiff [Tr. 19]. Considering Plaintiff's extensive interventional pain management treatment including numerous spinal injections and nerve ablation procedures, adjustments to her spinal cord stimulator, and different prescription medications, it is not manifestly obvious how or why Plaintiff's lack of surgery contradicts the opinions of Dr. Renta and Dr. Khambati.

In stark contrast to the little weight given to the opinions of Plaintiff's treating physicians, the ALJ afforded the greatest deference to the opinions of the non-treating physicians [Tr. 18]. Notably, "the report of a non-examining doctor is accorded little weight if it contradicts an examining doctor's report; such a report, standing alone, cannot constitute substantial evidence." *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Interestingly, in assigning "great" weight to the consulting non-treating physician opinions, the ALJ inexplicably set forth substantially the

same statement made when deciding to assign "some" to "little" weight to Plaintiff's treating physicians.  Specifically, the ALJ stated:

> [T]he objective medical evidence that shows tenderness in the lumbar facets, thoracic, and paraspinal region along with reduced range of motion, tenderness in the sacroiliac joints (SI), and occasional antalgic gait supports this opinion.  The record, however, shows that the claimant with her treatment regimen involving radiofrequency Rhizotomy along with her pain medications. Furthermore, it was specifically noted that surgical intervention was not indicated. Therefore, the objective medical evidence supports this opinion.

[Tr. 18].

The ALJ also assigned great weight to one-time consultative examiner Dr. Dallas Hessler [*Id.*].  Dr. Hessler took an oral history, conducted an examination, and issued a post-examination evaluation [Tr. 658-63].  Dr. Hessler diagnosed degenerative changes in the lumbar spine, headaches, and hypertension and opined that Ms. Howzell had no functional difficulties except with bending [Tr. 663].  Dr. Hessler's recitation of Plaintiff's medical history appears based upon Plaintiff's reported history and there is no indication that Dr. Hessler independently reviewed Plaintiff's history or ordered laboratory, x-ray or additional objective testing.

As for Plaintiff's mental functioning, the ALJ gave the greatest weight to the non-examiners over Dr. Marie Bourisquot, the consultative examiner [Tr. 18].  On June 21, 2016, Dr. Bourisquot conducted a psychological consultative examination [Tr.760-65].  At the time, Plaintiff reported a history of major depressive disorder, short-term memory problems, paranoia about her roommate deliberately trying to make her sick, trouble concentrating and completing tasks, anxiety, and panic-like symptoms [Tr. 761].  It was noted that Plaintiff appeared anxious, "was in tears most of the time," had difficulty recalling information, and needed information repeated [Tr. 762].  Plaintiff was fully oriented to person, place, and time, but was slow to do a serial sevens task, required extensive explanation, used her fingers, exhibited "impaired" concentration and

mental control, and could not perform a hypothetical transaction requiring her to count money and give change [*Id.*].   Dr. Boursiquot diagnosed unspecified depressive disorder and paranoid features, noted an "at best guarded" prognosis, and opined that Plaintiff would have "great difficulty responding to a strenuous work schedule and following direction and interacting with others" [Tr. 763].

The ALJ gave "little" weight to Dr. Bourisquot's opinion on grounds that it was "based on [Plaintiff's] subjective reports" and because the objective medical evidence shows normal mental status functioning for Plaintiff [Tr. 18].  However, Dr. Bourisquot's opinion is not based solely on subjective reports in that it includes observations that Plaintiff appeared anxious, was mostly in tears, had difficulty recalling information, needed information repeated, was slow and required extensive explanation to do a serial sevens task, had impaired concentration and mental control, and was unable to perform a hypothetical money counting transaction [Tr. 762].   It is unclear whether the ALJ considered these objective mental status findings which formed the basis of Dr. Bourisquot's opinion.  *See* 20 C.F.R. § 404.1527(c)(3) ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); *Martinez*, 660 F.App'x at 792 (clinical evaluation findings were consistent with the psychiatrist's functional limitations).   As for objective evidence, the examinations the ALJ relied upon included a December 2015 neurological examination regarding headaches [Tr. 719] and neurosurgical examinations to address Plaintiff's back pain [Tr. 855, 889 and 928].   It is unclear how or why these cited examinations conflict with Dr. Bourisquot's opinion.

The ALJ's rejection of Dr. Bourisquot's opinion was not harmless. The mental limitations found by Dr. Bourisquot are material to the outcome of the ALJ's decision based on the VE's

responses to hypothetical questions indicating that Plaintiff has no transferrable skills to other light or sedentary occupations and that she would be unable to any unskilled occupations in the national economy [Tr. 361].

Plaintiff persuasively cites to the Eleventh Circuit cases of *Martinez v. Acting Commr. of Social Sec.*, 660 F.App'x 787 (11th Cir. 2016) and *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019).   In *Martinez*, a plaintiff's treating physician opinions were not given controlling weight because the ALJ found those opinions to be contradicted by contemporaneous clinical notes and other record evidence.  *Id.* at 791-93.  After reviewing the treatment notes and other medical records, the court found that the opinions of the treating physician were not inconsistent with the other records and concluded that had the treating physician's opinion been given controlling weight, the opinions would have been inconsistent with the ALJ's finding that the plaintiff was not disabled.  *Id.*  The court reversed and remanded the case so that the ALJ could properly weigh the treating physician opinions.  *Id.*

More recently, in *Schink*, the court vacated a denial of disability benefits after finding that the ALJ failed to give good cause to discount the opinion of two treating physicians while giving substantial weight to the opinion of two evaluative physicians who had never treated the plaintiff. *Schink*, 935 F.3d at 1256, 1260.  In assigning the treating physician opinions little weight, the ALJ found their treatment notes indicated only mild limitations during the plaintiff's mental-status examinations.  *Id.* at 1262.  The *Schink* court noted that the ALJ did not clearly articulate the basis for that conclusion and found it unclear how the record could support such a conclusion.  *Id.*  For instance, while some of the plaintiff's mental-status examinations were better than others with respect to various metrics, the alleged inconsistencies within those medical records were found insufficient to discount the treating physician opinions because "[i]t is not enough merely to point

to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing." *Id.* at 1262–63.

The logic of *Martinez* and *Schink* applies here where the ALJ improperly minimized or misapprehended contemporaneous treatment notes and other record evidence documenting Plaintiff's overall medical condition and ongoing treatment to address "progressively worsening" pain. The treatment records coincide with the treating physician opinions of Dr. Renta and Dr. Khambati. Curiously, the ALJ cited abnormalities in Plaintiff's medical condition that could readily support these treating physician opinions but cited those irregularities in support of the less restrictive opinions by non-treating and non-examining physicians. It is unclear why. The ALJ's decision thus does not satisfy the good cause standard for discounting a claimant's treating physician opinions and the Court recommends that this matter be remanded for a more thorough, logical, and proper reassessment of the medical opinion evidence. *See Tavarez v. Commr. of Social Sec.*, 638 F.App'x 841, 848 (11th Cir. 2016) (reversing and remanding where ALJ's assessment reflected an inaccurate and incomplete understanding of the medical evidence); *Scott v. Berryhill*, 2018 WL 1570373, at *14 (S.D. Fla. Mar. 29, 2018) ("'the ALJ fails to state with at least some measure of clarity the grounds for the decision'" where the treating physician's report "indicates that the Plaintiff has limitations beyond those determined in the ALJ's opinion and includes clinically significant findings that the ALJ states are absent from the record.") (quoting *Colon v. Colvin*, 660 Fed. App'x 867 (11th Cir. 2016)).

## B. The ALJ's Failure to Evaluate Plaintiff's Headaches Impairment[3]

Plaintiff next argues that the ALJ erroneously failed to consider Plaintiff's alleged headaches impairment at step two. When determining a claimant's RFC, the ALJ must consider "all the relevant medical and other evidence." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). An ALJ has a duty to consider all of a claimant's impairments, severe and non-severe, both singly and in combination, when making an analysis of disability. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010); 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."); 20 C.F.R. § 404.1523(c).

As Defendant concedes, the ALJ did not discuss or make any express findings regarding Plaintiff's alleged disabling headaches. Defendant asserts that the ALJ nonetheless fulfilled her duty at step two by finding other severe impairments and continuing forward with the five-step sequential evaluation. Further, Defendant argues, Plaintiff fails to show that the ALJ's analysis failed to account for the functional limitations arising from Plaintiff's alleged headaches impairment. The Court disagrees.

In her initial application, Plaintiff listed headaches as one of several alleged disabling conditions [Tr. 223]. Then, when asked by the ALJ at the later hearing why she stopped working,

---

[3] In the interest of completeness, the Court will evaluate all three of Plaintiff's arguments. The Court notes, however, that Plaintiff's two remaining arguments need not be addressed if the U.S. District Judge agrees with the above recommendation for the case to be remanded to the Commissioner for further consideration of the medical opinion evidence. *See, e.g., Demench v. Sec'y of Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (it is unnecessary to review other issues raised on appeal where remand is required and such issues will likely be reconsidered in the subsequent proceedings); *Bekiempis v. Colvin*, WL 459198, at *5 (M.D. Fla. Jan. 17, 2017) (finding it appropriate to pretermit discussion of two other contentions raised by claimant in light of a remand, which would generate a new decision).

Plaintiff plainly responded that "it wasn't a head injury, but I had something go on with my head that I was passing out and it was spinning and I couldn't mentally function anymore…the doctors could never find out what it was, but it caused me to have memory loss and tightness of my head…like a pressure…coming from the back of my head all the way to the front." [Tr. 42-43]. Plaintiff testified to disabling daily headaches that could sometimes last for an entire day or even several days at a time [Tr. 57]. Plaintiff added that her headaches affected her ability to concentrate and focus [Tr. 58].

Plaintiff's testimony about her headaches was supported by records in her medical history. Plaintiff first reported having headaches around July 2015 which she described at the time as "persistent tightness in her head" [Tr. 661, 761], as well as vertigo symptoms with lightheadedness and nausea [Tr. 502]. Plaintiff underwent specialist work-up for her headaches and vertigo symptoms, including being seen by a cardiologist [Tr. 492-503], and a neurologist [Tr. 508, 655-57].

In December 2015, Dr. Linda M. Pao, M.D., a neurologist at Cleveland Clinic diagnosed near syncope, new daily persistent headache, and cervicalgia [Tr. 508]. To assess Plaintiff's complaint of headaches, a CT scan of the cervical spine was ordered on March 22, 2016, which showed C6-C7 mild/moderate canal stenosis and moderate neuroforaminal stenosis and C3-C4 mild canal stenosis from central disc protrusion [Tr. 669]. In June 2016, Dr. Pao diagnosed chronic tension-type headache, intractable and cervicalgia [Tr. 655]. In July 2016, Plaintiff reported continued headaches characterized by pressure on the top of her head which were worsened with stress, overheating, and exertion [Tr. 788]. Dr. Pao diagnosed "persistent daily head pressure and tightness since 7/2015 but worsening" and "suspect myofascial pain" [Tr. 790]. Plaintiff's treating physicians Dr. Khambati and Dr. Renta both discussed Plaintiff's headaches in their respective

medical opinions [Tr. 710, 752] and underlying records.  As discussed above, the ALJ failed to articulate good cause for discounting these treating physician opinions.

Despite the above evidence regarding headaches, the ALJ did not discuss or even mention Plaintiff's headaches at all.  This absence is notable given that headaches featured prominently in Plaintiff's medical history and in her hearing testimony.  Whether ultimately found severe or not, the ALJ should have considered Plaintiff's alleged headaches impairment but failed to do so.  This error was not harmless.  Without any assessment by the ALJ of how Plaintiff's alleged disabling headaches affected her ability to work, it is not clear what impact, if any, Plaintiff's headaches had on the ALJ's ultimate RFC finding.  This failure to assess this diagnosed impairment constitutes reversible error.  *See Holsey v. Colvin*, 2013 WL 1233608, at *5 (M.D. Fla. Mar. 27, 2013) ("The ALJ's determination of Plaintiff's [RFC] could easily be impacted with a thorough and accurate consideration of Plaintiff's headaches" and the ALJ's failure to do so required remand); *see also Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 767 (11th Cir. 2014) ("[W]ithout considering all of [plaintiff's] diagnosed impairments . . . the RFC is not supported by substantial evidence.") (citing *Crawford*, 363 F.3d at 1158; *Lewis*, 125 F.3d at 1440).

### C. The ALJ's Assessment of Plaintiff's Subjective Symptoms

Lastly, Plaintiff argues that the ALJ failed to properly assess Plaintiff's subjective symptoms.  In considering a claimant's symptoms, the ALJ must follow a two-step process where the ALJ first determines whether there is an underlying medically determinable physical or mental impairment—*i.e.,* an impairment that could be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.  *Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017).  Once this is shown, the ALJ must evaluate

the intensity and persistence of a claimant's symptoms such as pain to determine the extent that these symptoms limit Plaintiff's ability to perform work-related activities.  *Id.*  If statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record.  *Id.*

As the fact-finder, the ALJ bears the ultimate sole responsibility to weigh the Plaintiff's complaints about her symptoms against the record as a whole. 20 C.F.R. §§ 404.1529(a), 416.929(a).  A clearly articulated credibility finding supported by substantial evidence in the record will not be disturbed by a reviewing court.  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  "[T]he ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony." *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).  If the ALJ decides not to credit such testimony, she must articulate explicit and adequate reasons for doing so.  *Hale v. Bowen*, 831 F. 2d 1007, 1011 (11th Cir. 1987).  The lack of an express credibility finding becomes a ground for remand when credibility is critical to the case outcome.  *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). That determination, however, may be affected by the lack of a fully developed record, and should be revisited on remand.  For this, the ALJ must examine the entire record.

Here, the ALJ concluded that although Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record [Tr. 16].  The ALJ's articulated reasons for this finding included mention of Plaintiff's unprescribed used of a cane and statement that Plaintiff's daily

activities such as shopping in stores and driving short distances were inconsistent with her alleged disabling symptoms [*Id.*].  The ALJ also found that while Plaintiff asserted the need for narcotic pain medications, her symptoms were "conservatively manageable" or "not as debilitating" based upon record evidence showing that Plaintiff was advised to use over the counter drugs, ice packs, analgesic patches, and explore meditation/yoga/exercise programs [*Id.*].

Although the ALJ followed the appropriate procedure regarding the credibility determination, this Court has concerns about whether the determination is supported by substantial evidence.  For instance, the ALJ's reasoning that Plaintiff's symptoms were "conservatively manageable" appears to overlook Plaintiff's history of prescribed controlled substances— including percocet, oxycodone, temazepam, and diazepam [Tr. 540, 543, 923, 927]—and Plaintiff's history of interventional pain management treatment including rhizotomy, joint/epidural injections, and spinal cord stimulator adjustments.  Based upon the need for a remand for the ALJ to reassess the medical opinion evidence of record and expressly evaluate Plaintiff's headaches in making a final disability determination, it will be necessary for the ALJ to also reevaluate the credibility of Plaintiff's subjective symptoms based upon the entirety of the record.

## IV.    <u>CONCLUSION AND RECOMMENDATION</u>

Overall, the record demonstrates that the ALJ did not properly consider all of Plaintiff's alleged impairments in determining Plaintiff's RFC and ability to return to her past relevant work. Upon a thorough review of the administrative record, the Court cannot find that the ALJ built an accurate and logical bridge from the available evidence to the ultimate conclusion.  The ALJ improperly gave the greatest deference to non-treating physician opinions and discounted the opinions of Plaintiff's two treating physicians without demonstrating good cause to do so.  The ALJ also failed to evaluate Plaintiff's alleged headaches impairment even though headaches

featured prominently in Plaintiff's documented medical history.  Accordingly, the Commissioner's final decision is not based on substantial evidence and should be remanded for further proceedings. On remand, the Commissioner should reassess the entire record, reconsider the medical opinion evidence, and evaluate Plaintiff's alleged headaches impairment.

The Court thus respectfully **RECOMMENDS** that Defendant's final administrative decision be **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings; that Plaintiff's Motion for Summary Judgment [DE 10] be **GRANTED**; that Defendant's Motion for Summary Judgment [DE 13] be **DENIED**; and that a final judgment be entered in Plaintiff's favor.

## VI.     <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with U.S. District Judge Roy K. Altman within 14 days after being served with a copy.  28 U.S.C. § 636(b)(1)(C).  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  11th Cir. R. 3-1.

**DONE AND RECOMMENDED** in Chambers at West Palm Beach, Florida, this 20th day of July, 2020.

<u>DAVE LEE BRANNON</u>
U.S. MAGISTRATE JUDGE